UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIMOTHY HILL,

          Plaintiff,                       Case No. 13-cv-11228

v                                            Honorable Thomas L. Ludington

HERBERT ROOFING & INSULATION, INC,

          Defendant.
_____/

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE EXPERT AS MOOT**

On March 20, 2013, plaintiff Hill filed suit against his previous employer, Herbert Roofing. Hill alleged that Herbert Roofing terminated his employment in violation of the Fair Labor Standards Act and the Michigan Minimum Wage Act. In addition, Hill alleged that Herbert Roofing violated the Michigan Bullard-Plawecki Act by refusing to turn over all the documents contained in his personnel file.

On February 24, 2014, Herbert Roofing filed a motion for summary judgment on all of Hill's claims. The parties agree that Hill's claim under the Michigan Minimum Wage Act is preempted by Hill's FLSA claim, and therefore his Minimum Wage Act claim will be dismissed. Because Hill has not proffered evidence showing that Herbert Roofing's reason for terminating his employment was pretextual, summary judgment in favor of Herbert Roofing will be granted as to Hill's FLSA retaliation claim. Moreover, Hill has not advanced any evidence to substantiate the claim that Herbert Roofing intentionally withheld documents from his personnel file, and therefore his Bullard-Plawecki Act violation claim will be dismissed.

Because the Court will dismiss Hill's claims on the merits, Herbert Roofing's motion to strike Hill's expert testimony on damages will be denied as moot.

# I

Hill brought suit against Herbert Roofing after a confrontation with his supervisor that resulted in termination of his employment. The parties dispute almost every factual allegation leading up to and during the confrontation, and therefore each party's version is recounted below. Both parties' narratives will be summarized, but the Court will view the evidence and draw all reasonable inferences in favor of the non-movant, as it must on a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## A

According to Hill, in late September 2012[1], he was working on a roofing project for Herbert Roofing. Def.'s Mot. Summ. J., Ex. A at 8, ECF No. 31. Hill was working on the roof with some other laborers when he saw Herbert Roofing management, Jake Maynard and Jason Herbert, pull up to the apartment building. *Id*.

Hill then went down to another company truck parked near the apartment building to urinate. *Id*. at 9. Hill denies that he was off the roof for more than 10 minutes. *Id*. After relieving himself, Hill returned to the roof. *Id*.

On the roof, Hill observed Jason Herbert, the owner, talking to Brad Bettner, the foreman. *Id*. Hill approached Mr. Herbert and started "asking him about overtime pay and about pay before the shop and after the shop that we didn't get paid for." *Id*. Mr. Herbert responded by

---

[1] The parties dispute the date of the confrontation on the roof. In his deposition, Hill claims that he was terminated in September 2012. Hill Dep. 8. However, on his unemployment benefits application, he claims that his last day of work at Herbert Roofing was on October 19, 2012—which is also substantiated by Hill's resume, in which he claims to have been employed by Herbert Roofing until 10/2012. Def.'s Mot. Summ. J. Ex. H; I. In contrast, Herbert Roofing employees claim the rooftop confrontation occurred on October 29, 2012. Bettner Decl. 21; Herbert Decl. 29. Although the parties dispute the date of the confrontation, this factual issue is immaterial to Herbert Roofing's motion for summary judgment.

saying that "they don't pay for overtime and they also do not pay for anything that happens before or after the job at the shop." *Id*. The conversation apparently ended soon after, and "Jason Herbert fired me on my last day at work immediately after asking him again about paying my overtime and off-site work." Pl.'s Resp., Ex. 3 at ¶ 8. After the conversation, Hill did not return to work at Herbert Roofing:

> Q: But since the time you were terminated from Herbert Roofing, which you testified a minute ago was September 2012, have you been employed anywhere?
>
> Hill: No.

Def.'s Mot. Summ. J., Ex. A at 9.

Hill denies ever using foul language or laughing at Mr. Herbert during the conversation on the roof. *Id*. Moreover, Hill denies ever receiving any reprimands regarding absences or poor work performance: "No one told me that I had any attendance problems, was ever insubordinate, or was wasting time while at work." Pl.'s Resp., Ex. 3 at ¶ 9.

**B**

According to Hill's foreman Brad Bettner, Hill had a history of tardiness and absenteeism: "On occasion, I spoke to Mr. Hill and verbally counseled him for being absent, late, and/or for leaving early without permission." Def.'s Mot. Summ. J., Ex. D at ¶ 5. Although Hill's foreman never issued any formal or written warnings to Hill, Bettner claims that he made Herbert Roofing management, including Mr. Herbert, aware of the issues with Hill. *Id*. Indeed, Mr. Herbert claims that he issued verbal warnings to Hill about those concerns. Def.'s Mot. Summ. J., Ex. E at ¶ 5.

On the day of the conversation on the roof, Mr. Bettner, the foreman, called Jason Herbert on the phone to let him know that "Mr. Hill was standing/walking around and not working on the roofing job . . . ." Def.'s Mot. Summ. J., Ex. D at ¶ 21.

Soon after Mr. Herbert and Mr. Maynard arrived at the job site, Bettner observed Hill leave the roof without permission and that Hill "was gone for an unreasonably lengthy period of time." *Id.*; Def.'s Mot. Summ. J., Ex. E at ¶ 5. Mr. Bettner believed that "[t]here was . . . no need to leave the roof at that time." Def.'s Mot. Summ. J., Ex. D at ¶ 21. Mr. Herbert also saw Hill leave the roof and sit in a company vehicle for 10-15 minutes. Def.'s Mot. Summ. J., Ex. E at ¶ 5, Ex. C at ¶ 4.

While Hill was still on the ground, Mr. Herbert climbed onto the roof, and Mr. Bettner reiterated his concerns about Hill's "standing walking around and not working." Def.'s Mot. Summ. J., Ex. D at ¶ 21, Ex. E at ¶ 4-5. He also told Mr. Herbert that Hill had left the roof without permission and had been gone for a period of time. Def.'s Mot. Summ. J., Ex. D at ¶ 21.

When Hill returned to the roof, Mr. Herbert went over to speak to Hill. Mr. Herbert stated that "we had been sitting in the truck and noticed him not doing anything for some time and asked him what could, what could possibly take 15 minutes down in the truck." Pl.'s Resp., Ex. 5 at 6. Hill responded by laughing at Mr. Herbert and using foul language: "At that point he told me that he didn't give a shit, I believe in those terms, somewhere around there, that he didn't give a shit . . . ." *Id.* As a result, Mr. Herbert sent Hill home and terminated his employment. *Id.*; Pl.'s Resp., Ex. 1 at 4.

Herbert Roofing management and Hill's supervisors deny that Hill ever discussed overtime payment with them. Pl.'s Resp., Ex. 5 at 6; Def.'s Mot. Summ. J., Ex. D at ¶ 9-10, Ex. C at ¶8.

**II**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

**III**

Herbert Roofing seeks summary judgment on two of Hill's claims: FLSA retaliation and violation of the Bullard-Plawecki Act. The parties agree that the FLSA preempts Hill's Michigan Minimum Wage Act claim, and therefore that claim will be dismissed.

**A**

Hill alleges a claim of retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"). Section 15(a)(30 of the Act makes it unlawful for any person to discharge an employee for filling a complaint, instituting a proceeding, or testifying in a proceeding under or related to the FLSA. 29 U.S.C. § 215(a)(3). "To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known to the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection

between the protected activity and the adverse employment action." *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (citing *Williams v. Gen. Motor Corp.*, 187 F.3d 553, 568 (6th Cir. 1999)). "If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action." *Id*.

Herbert Roofing contends that Hill cannot establish a prima facie case for the first, second, or fourth factors. Moreover, even if Hill has established a prima facie case, Herbert Roofing contends that it had a legitimate, non-retaliatory motive for terminating Hill's employment.

i

First, Herbert Roofing disputes Hill's contention that he engaged in protected activity under the FLSA. The Supreme Court has held that "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (2011). The Court concluded that the definition of the word "complaint" should "provide 'broad rather than narrow protection to the employee.'" *Id*. (quoting *NLRB v. Scrivener*, 405 U.S. 117, 122 (1972).

Accordingly, "a complaint if 'filed' when a reasonable, objective person would have understood the employee to have put the employer on notice that the employee is asserting statutory rights under the Act." *Id*. at 1335. The Court recognized the employers must be given fair notice of an employee's FLSA complaint to satisfy the "complaint" requirement: "[T]he phrase 'filed any complaint' contemplates some degree of formality, certainly to the point where

the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Id*. at 1334.

Here, Hill asserts that he broached the topic of overtime several time with his employers, Jason Herbert and Dervin (Jake Maynard). As evidence of these discussions, Hill advances a handwritten note he prepared at some point in time (though admittedly not made contemporaneously with the discussions themselves):

> 08-30-12 Asked Jake [Maynard] about how to do overtime on time card. He said they don't pay o.t. and to take any hours over 40 and multiply by hourly rate and put that number as shingle pay.
>
> 09-4 Talked to Jason [Herbert] about o.t. and he said they don't pay o.t. cuz the job's aren't bid for overtime. Also asked about being paid for time spent at shop loading/unloading trucks/trailers and he said it's never been a policy to pay for that type of work and our time doesn't start until we begin working on site.
>
> 9-13 Text conv. w/Jake [Maynard] brought up o.t., he stated "you know our policy on that has never changed".
>
> Week of 10/15 Spoke w/Jason [Herbert] again about o.t. an being paid for shop work. He said he can't pay me o.t. because then he'll have to pay every one and it's not in budget for jobs.
>
> 10-17 Contacted Detroit wage & hour office to file a complaint.
>
> 10-18 Informed some co-employees what I found out talking to wage/labor dept.
>
> 10-22 Jason [Herbert] was on job site and I again asked 'bout o.t. and paid for off-site work at the shop n he fired me saying I'm f____g done w/you get the f__k off my roof. [sic throughout]

Def.'s Mot. Summ. j. Ex. J. Hill also incorporated the statements made in his handwritten note into his declaration. *See* Pl.'s Resp. Ex. 3.

Hill elaborated on his final discussion in his deposition:

Q: Okay. And what specifically was said during that conversation?

Hill: I was asking [Jason Herbert] about overtime pay and about pay before the shop and after the shop that we didn't get paid for.

- 7 -

> Q: Okay. And what did he tell you at that time?
>
> Hill: He told me that they don't pay for overtime and they also do not pay for anything that happens before or after the job at the shop.

Pl.'s Resp., Ex. 2 at 8. Hill admits that he does not have any written documents memorializing his complaints and instead relies primarily on his personal recollection of events.

Although Hill did not make any formal, written complaints, the Sixth Circuit Court of Appeals has held that informal complaints can trigger the antiretaliation provisions of FLSA. *See Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004). Moreover, "it is the assertion of statutory rights which is the triggering factor . . . ." *E.E.O.C. v. Romeo Community Schools*, 976 F.2d 985, 989 (6th Cir. 1992). In other words, the FLSA's antiretaliation provisions cover internal complaints to management.

Here, Hill has alleged that he complained several times to Herbert Roofing's internal management regarding overtime pay. He specifically referenced overtime policies and how to receive overtime pay. Hill made his complaints to his direct supervisors. Although Herbert Roofing disputes these conversations took place, the Court may not weigh the credibility of the evidence on a motion for summary judgment. Accordingly, Hill has provided sufficient evidence, primarily in the form of his own testimony, to create an issue of fact for the jury on the question of whether he engaged in protected activity under the FLSA when he attempted to discuss Herbert Roofing's overtime policies.

**ii**

Closely related to the first factor of the test is the second: that Plaintiff's exercise of his FLSA right was known to the employer. Although Herbert Roofing disputes that Hill ever complained about overtime, Hill has provided sufficient evidence that he had conversations with

his direct supervisors. Taking the facts in the light most favorable to non-movant Hill, as the Court must, Herbert Roofing would have had known that Hill was attempting to exercise his FLSA rights when he complained about the overtime policies. *See Auten v. Brooks*, 2006 WL 2090095, at *7 (S.D. Ohio July 25, 2006) (plaintiff had satisfied the first three prongs of his prima facie case when he alleged that he complained to his immediate supervisor and that he was later fired).

### iii

For an employer's action to meet the third factor of the prima facie test, a court must find that a reasonable employee would find the challenged action materially adverse, meaning that it might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006) (internal quotations omitted). Termination of employment constitutes an adverse employment action. Adair, 452 F.3d at 490 (citing *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). Here, the parties concede that Hill suffered an adverse employment action when Herbert Roofing terminated his employment. Mot. Summ. J. 11 ("Plaintiff cannot satisfy either the first, second, or fourth prongs of the prima facie test.").

### iv

Herbert next contends that Hill cannot satisfy the fourth factor of his prima facie case, which requires that there be a causal connection between the employee's complaint and the adverse action. Herbert Roofing claims that "Plaintiff cannot come forward with any evidence whatsoever to establish that the reason for his termination was because he 'objected to Herbert Roofing's refusal to pay overtime wages.'" Mot. Summ. J. 14. Furthermore, Herbert Roofing contends that "Plaintiff has admitted that no one at Herbert Roofing ever told him that he was

terminated for making complaints about and/or objecting to Herbert Roofing's pay and overtime practices." *Id*.

Although Herbert Roofing correctly contends that Hill has not provided direct evidence of retaliatory intent, Hill is not required to. Instead, he can establish a prima facie case by proffering circumstantial evidence that would support an inference of causation. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013). At the summary judgment stage, Hill's "burden to show causation entails 'requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible.'" *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 533 (6th Cir. 2011) (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)).

"Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). For example, when an employer takes an adverse employment action immediately after discovering a plaintiff's protected conduct, the plaintiff does not need to provide additional evidence of retaliatory intent. *Id*. at 526.("[U]nlike most plaintiffs, Mickey is unable to couple temporal proximity with any such other evidence of retaliation because his employer immediately retaliated against him upon learning of his protected activity.")

Here, the temporal proximity between the alleged complaint and the adverse action is quite small, meaning that the inference of causation is strong. Hill claims that he was fired immediately after confronting Jason Herbert about overtime pay: "Jason Herbert fired me on my

last day at work immediately after asking him again about paying my overtime and off-site work." Pl.'s Resp., Ex. 3 at ¶ 8. Hill was sent home from the worksite and his employment was officially terminated.

Hill's immediate termination following his confrontation with Jason about the overtime policies is sufficient, by itself, for a reasonable juror to conclude that the Hill's termination was causally connected to his protected FLSA conduct.

v

Once a plaintiff has established his prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's [discharge]." *McDonnell Douglas*, 411 U.S. at 802. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee . . . ." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-255 (1981). "The employer's burden at this stage is one of production, not persuasion." *Pettit*, 429 F. App'x 524, 535 (6th Cir. 2011) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000)).

Herbert Roofing has explained a legitimate, non-discriminatory reason for terminating Hill's employment: Hill had a record of poor job performance. Herbert Roofing's foreman, Brad Bettner, claims that he "spoke to Mr. Hill and verbally counseled him for being absent, late, and/or for leaving early without permission." Def.'s Mot. Summ. J., Ex. D at ¶ 5. In addition to an alleged pattern of tardiness and missed work shifts, Bettner also explained that on the day Hill was fired, he was using profanity, being insubordinate, and wasting time:

> When Mr. Herbert got to the roof I approached him and reiterated my concerns to him about Mr. Hill standing/walking around and not working. I also told Mr. Herbert that Mr. Hill left the roof without permission and had been gone for an unreasonably lengthy period of time. Shortly thereafter, Mr. Hill climbed back up on the roof and Mr. Herbert walked over to speak to Mr. Hill. . . . Mr. Hill told Mr. Herbert that he [Mr. Herbert] was full of shit or words to that effect. At that

time, Mr. Herbert told Mr. Hill that he was terminated and that he should leave the roof and go home.

*Id*. at ¶ 21. And according to Herbert Roofing's Employee Handbook, behavior such as what Mr. Bettner described would be grounds for termination:

> Improper conduct by and between employees and/or by and between employees and business associates on company premises or adversely affecting company work will not be tolerated. Any employee demonstrating improper conduct will be subject to disciplinary action including termination of employment.

Employee Handbook 14, Pl.'s Mot. Summ. J., Ex. B.

Herbert Roofing has proffered evidence that Hill had a poor work record and that Hill used foul language when speaking with his supervisor. Both of these proffered reasons are legitimate reasons for terminating Hill's employment. *See White v. Telcom Credit Union*, 874 F. Supp. 2d 690, 707 (E.D. Mich. 2012) ("[i]t is not disputed that Defendant has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff—that she was insubordinate and belligerent during the May 17, 2012 meeting with [her supervisor]."); *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400-01 (6th Cir. 2009) (employee's poor work performance was a legitimate reason for terminating employment).

If a defendant proffers legitimate reasons for terminating an employee's employment, as Herbert Roofing as done here, the plaintiff must "prove the employer's proffered reasons for its adverse actions against the employee were, in fact, pretext for retaliation." *Pettit*, 429 F. App'x at 535. More specifically, at the summary judgment stage:

> To raise a genuine issue of fact as to pretext and defeat a summary judgment motion . . . the Plaintiffs must show that (1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate [defendant's] action, or (3) the proffered reason was insufficient to motivate the action.

*Id*. (internal quotation marks omitted) (quoting *Adair*, 452 F.3d at 491).

To show that the defendant's proffered reason "had no factual basis," a plaintiff must advance evidence that the employer did not "honestly believe" in the given reason for the plaintiff's termination. *Braithwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). An employer has an honest belief in its reason for discharging an employee when the employer reasonably relied "on the particularized facts that were before it at the time the decision was made." *Majewski*, 274 F.3d at 1117. "The burden of production is on the plaintiff to demonstrate that the reason given by the employer is mistaken, foolish, trivial, or baseless." *Clay*, 501 F.3d at 714.

Hill appears to argue that Herbert Roofing's reason for terminating Hill was pretextual by claiming that "[t]here is no 'honest belief'" that Hill was insubordinate, wasting time, or had attendance issues. The Court understands this argument to be a challenge to the first and second factors—that Herbert Roofing's proffered reason had no factual basis and that the proffered reason did not actually motivate Herbert Roofing's decision.

When the honest belief rule is invoked, to establish pretext, "the plaintiff must allege more than a dispute over the facts upon which his discharge was based." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001). In determining whether the employer had an "honest belief" in the proffered basis for discharge, the court examines whether Herbert Roofing has demonstrated a "reasonable reliance" on the particularized facts that were before it at the time the decision was made. *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502-03 (6th Cir. 2007).

Although Hill disputes Herbert's version of events, the record indicates that Herbert honestly believed that Hill was performing his job poorly. Jason testified that he saw Hill had left the work area for an unreasonably lengthy period of time, that he had just received a verbal

report on Hill's work issues, and that Hill acted disrespectfully and used foul language when confronted about these issues. Although the decision to terminate Hill was made immediately after the confrontation, even a hasty decision can be honestly held. *See McConnell v. Swifty Transp. Inc.*, 198 F. App'x 438, 444 (6th Cir. 2006) ("While a two-minute decision may not seem like sound business judgment, we must not substitute our own judgment for the reasoned judgment of a business decisionmaker.").

Hill has not proffered any evidence that would undermine Jason's belief or show that the belief was merely pretextual, as is his burden. Hill points to the testimony of Maynard to show that Hill was a capable worker:

> Q: In terms of Mr. Hill performing his roofing work itself, during his employment at Herbert was he performing his work satisfactorily?
>
> Maynard: When Timmy wanted to, he was a good worker, sir. Excuse me, capable.

Pl.'s Resp., Ex. 1 at 6. However, Maynard's less-than-stellar endorsement necessarily implies that there were times when Hill was a less than capable employee.

In addition to Maynard's testimony, Hill also argues that he did not have any attendance issues, as evidenced by the lack of formal or written warnings in Hill's personnel file. In effect, Hill challenges the sufficiency of Herbert Roofing's evidence against him—namely, that the absence of written complaints means that there were never any complaints about Hill's work performance. But even if one believes that Hill did not have any prior complaints about his work performance, he still has not shown that his termination was pretextual.

First, a plaintiff "cannot prove pretext simply by showing that [defendant's] decision was mistaken or not correct." *Joostbertns v. United Parcel Service, Inc.*, 2004 WL 3457633, *7 (W.D. Mich. 2004); *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). Thus, even if

- 14 -

Herbert believed Bettner's "erroneous" assertion that Hill had a history of tardiness and absenteeism, Herbert's reliance on this assertion is not enough to show pretext. "The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. *Thomas v. Kmart Corp.*, 2006 WL 2802266, *9 (W.D. Ky. 2006).

Moreover, even without considering Hill's past work record, Herbert had particularized facts before him which could reasonably be relied upon to support his decision to terminate Hill. Immediately before Hill's termination, Herbert and Bettner observed him leave the roof for an "unreasonable" period of time. And when he returned, Herbert claims that Hill used foul language and acted insubordinately. Hill has not advanced any evidence showing that the reasons given by Herbert Roofing for his discharge were pretextual.

Accordingly, Herbert Roofing's motion for summary judgment will be granted with respect to Hill's FLSA retaliation claim.

**B**

Herbert Roofing next claims that Hill cannot prevail on his claim for violation of Michigan's Bullard-Plawecki Act ("BPA") because he received a complete copy of his personnel file. Prior to the commencement of this suit, Hill had requested his personnel file. Although Herbert Roofing produced the file it "[had] no documentation of or information about any attendance problems, insubordination, or wasting time at work." Pl.'s Resp., Ex. 3 at ¶ 10.

On December 13, 2012, Hill's counsel sent Herbert Roofing a letter requesting that "[i]f any required records were omitted, please immediately provide them to me." Pl.'s Resp., Ex. 7. According to Hill, Herbert Roofing did not respond to the request. In its motion for summary judgment, Herbert Roofing maintains that "Plaintiff received his complete personnel file from

Herbert Roofing before he filed this lawsuit." Mot. Summ. J. 20. Therefore, according to Herbert Roofing, Hill cannot prevail on a claim under the BPA.

The BPA permits an employee to request access to his personnel record:

An employer, upon written request which describes the personnel record, shall provide the employee with an opportunity to periodically review at reasonable intervals, generally not more than 2 times in a calendar year . . . the employee's personnel record if the employer has a personnel record for that employee.

Mich. Comp. Laws § 423.503.

Under § 423.511 of the BPA:

If an employer violates this act, an employee may commence an action in the circuit court to compel compliance with this act. . . . Failure to comply with an order of the court may be punished as contempt. In addition, the court shall award an employee prevailing in an action pursuant to this act the following damages:

(a) For violation of this act, actual damages plus costs.

(b) For a willful and knowing violation of this act, $200.00 plus cost, reasonable attorney's fees, and actual damages.

Hill argues that, pursuant to the BPA, he "was entitled to a complete copy of his personnel records." Compl. ¶ 21. Specifically, he claims that Herbert Roofing should have kept a record of any insubordination, poor attendance, or time wasting complaints against him. Hill claims that Herbert Roofing's explanation that it does not keep such records "is improbably[sic] and suggest the file was scrubbed . . . ." Pl.'s Resp. at 14.

However, Hill's bare allegation that Herbert Roofing "should have" kept more in-depth personnel files is not sufficient to support a claim under the BPA, nor is it sufficient to support an inference of improper activity. The BPA only requires that the employer produce the personnel record it has actually created for the employee, not the one it should have created. Indeed, the Sixth Circuit has held that, even if an employer loses a personnel file, the employer has not violated the BPA: "if a personnel file is lost, then the employer does not have a personnel

record for that employee within the meaning of the Bullard-Plawecki Act and therefore the employer is not required to product it." *Ozier v. RTM Enterprises of Georgia, Inc.*, 229 F. App'x 381, 378 (6th Cir. 2007).

Although the *Ozier* court suggested that the BPA may be violated if the plaintiff produces evidence that an "an employer intentionally destroyed or concealed a file," *Ozier* at 378, Hill has produced no such evidence here. Instead, Hill claims that it would be improbable for a company to keep such poor personnel records. But this conclusion does not support an inference that Herbert Roofing is withholding the records. Indeed, if—as Plaintiff claims—the personnel file contained documentation of Hill's tardiness, absences, and poor work performance, these documents would only bolster Herbert Roofing's FLSA defense.

Hill has not proffered any evidence to indicate that Herbert Roofing intentionally withheld portions of his personnel file. Accordingly, summary judgment in favor of Herbert Roofing is appropriate on Hill's BPA claim.

## IV

On the same day that Herbert Roofing filed its motion for summary judgment, it also filed a motion to strike the testimony of Hill's expert witness. Hill's proposed witness, Michael Thompson, planned to testify regarding the amount of damages Hill suffered after his employment with Herbert Roofing was terminated. Herbert Roofing moved to exclude his testimony because it failed to comply with the discovery disclosure requirements of Federal Rule of Civil Procedure 26 and the admissibility requirements of Federal Rule of Evidence 702.

Because the Court will grant Herbert Roofing's request for summary judgment on all claims, Herbert Roofing's motion to strike Hill's damages expert is moot.

**V**

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 31) is **GRANTED**.

It is further **ORDERED** that Plaintiff's Complaint (ECF No. 1) is **DISMISSED**.

It is further **ORDERED** that Defendant's Motion to Strike Expert Witness (ECF No. 32) is **DENIED AS MOOT**.

                                                 s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge

Dated: April 8, 2014

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 8, 2014.

                                        s/Tracy A. Jacobs
                                        TRACY A. JACOBS